**E-FILED**
Monday, 21 March, 2005  04:18:31 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| HOOPESTON FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. **05-2074** |
| | ) | |
| THE CITY OF HOOPESTON, | ) | Equitable Relief Sou~~ght~~ **FILED** |
| ROBERT AULT and CHALMERS FLINT, | ) | |
| Defendants. | ) | |
| | ) | **MAR 2 1 2005** |

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

### COMPLAINT AND DEMAND FOR JURY

Hoopeston Foods, Inc. ("Hoopeston Foods"), by and through its attorneys, for its

complaint against the City of Hoopeston (the "City"), Robert Ault ("Ault") and Chalmers

Flint ("Flint") states as follows:

### NATURE OF THE ACTION

1.      Hoopeston Foods is a food processing company with a plant located in the

City of Hoopeston, Illinois (the "Plant"). In 1998, in an effort to control and budget the

cost of wastewater treatment and discharge, Hoopeston Foods negotiated with the City

for a written agreement which would set forth the terms of treatment and discharge of

Hoopeston Foods' wastewater over a twenty-year period of time.  The result of the

negotiations was an April 1, 1998 written agreement ("Agreement"). In the Agreement,

Mayor Robert Ault ("Ault") and City Clerk Chalmers Flint ("Flint")(currently the

Mayor), stated that they had obtained a unanimously passed resolution from the City

approving the Agreement.

The Agreement provided that Hoopeston Foods would be charged a maximum of

$2.30 per 1,000 gallons of wastewater treated and $2.30 per 1,000 gallons of wastewater

discharged from the retention ponds owned by the City to the City's sewer system. The

Agreement further provided that if the City's out-of-pocket cost of chemicals for treatment of Hoopeston Foods' wastewater was less than $2.30 per 1,000 gallons of wastewater, then the amount charged to Hoopeston Foods would be lowered commensurately. Despite the terms of the Agreement, starting in June of 2002, the City unilaterally raised the price of discharge to $2.58 per 1,000 gallons discharged from the City's wastewater retention ponds into the City's sewer system. At some time in approximately mid-2004, Hoopeston Foods learned for that the City had also been knowingly charging Hoopeston Foods for significantly higher volumes of wastewater than the actual volume of wastewater treated and then discharged.

Subsequent to its discovery of the problems with the City, Hoopeston Foods raised its concerns regarding the unilateral price increase and charges for inflated volumes of wastewater. The City's reaction, for the first time and after more than six years of performance under the Agreement, was to question the validity of the Agreement because the City had supposedly never passed a resolution formally approving the Agreement. Remarkably, this position is directly contradicted by the written statement contained in the Agreement that the City had unanimously passed a resolution approving the Agreement.

Through this action, Hoopeston Foods seeks a declaration of the validity of the Agreement as well as its specific performance. In addition, Hoopeston Foods seeks restitution of the overcharges unjustly received and retained by the City, which currently exceed $1,000,000. To the extent, that Ault's and Flint's 1998 representations were false as to approval for the Agreement and there is a legal consequence, Hoopeston Foods also seeks damages caused by Hoopeston Food's reliance on Ault's and Flint's false

2

statements and abuse of process.

## The Parties

2.     Hoopeston Foods, Inc. is a Delaware corporation, with its headquarters in Minneapolis, Minnesota. Hoopeston Foods operates a food processing facility located at 215 West Washington Street, Hoopeston, Illinois.

3.     The City of Hoopeston is located in Vermilion County, and is an Illinois municipal corporation with its offices located at 301 West Main Street, Hoopeston, Illinois. The remaining defendants are Robert Ault, the Mayor of the City of Hoopeston in 1998 and Chalmers Flint, the current Mayor of Hoopeston who in 1998 was the City Clerk. Both Ault and Flint reside in Hoopeston, Illinois.

## Jurisdiction and Venue

4.     This Court has jurisdiction based on 28 U.S.C. §1332 as the dispute is between citizens of different states, and the amount in controversy is in excess of $75,000. This matter is appropriately filed in the Urbana, Illinois Division of the United States District Court for the Central District of Illinois because the action arises out of transactions occurring in Vermilion County, Illinois.

5.     Venue is appropriate in this judicial district because the defendant resides within this judicial district, as well as the fact that a substantial part of the events giving rise to the action occurred within this judicial district.

## RELEVANT BACKGROUND

### A)     History and Nature of Treatment

6.     As part of the operations of Hoopeston Foods' Plant, certain wastewater is created, which requires treatment to remove organic wastes. Prior to 1996, Hoopeston

3

Foods provided its own treatment of its wastewater through discharge of the wastewater
to retention ponds and subsequent treatment. When treating its own wastewater,
Hoopeston Foods paid only a charge for discharge of the wastewater from the retention
ponds into the City's sewer system following treatment. During 1996, Hoopeston Foods
sold the retention ponds to the City and the City began also charging Hoopeston for
treatment of the wastewater. The Agreement at issue in the matter at bar arose out of a
need for Hoopeston Foods to control and budget for the cost of treatment and the
discharge of its wastewater and the City's desire to acquire the wastewater retention
ponds from Hoopeston Foods as part of the City's sewer system expansion project in or
about 1996.

7. From the date of the Agreement through today, the treatment and
discharge of Hoopeston Foods wastewater is a two-part process:

• First, Hoopeston Foods discharges its wastewater from its Plant to the
City's water retention ponds, (into which only Hoopeston Foods' wastewater is
discharged), where the wastewater is treated for removal of organic waste (the "Influent
Discharge"). When the City and Hoopeston Foods first entered into the Agreement, the
City treated the Influent Discharge with chemicals. Sometime after the execution of the
Agreement, the City purchased and installed aerators for the treatment of the Influent
Discharge. Since installing the aerators, the City has not incurred any costs for chemicals
for treatment of Hoopeston Foods' wastewater.

• Second, after the wastewater has been treated with chemicals or aerated,
as the case may be, the City discharges the wastewater from the City's retention ponds
into the City's sewer system (the "Effluent Discharge").

4

**B)**     **The Agreement**

8.     In April 1998, Hoopeston Foods and the City entered into the Agreement regarding discharge and treatment of Hoopeston Foods' wastewater. A true and accurate copy of the Agreement is attached hereto as Exhibit 1. The Agreement provides *inter alia* that "Hoopeston Foods has requested that it be permitted to discharge an amount of industrial wastewater per day necessary to operate its business . . . and the City has agreed to accept such volumes and so treat the Wastewater all pursuant to the terms and provisions of this Agreement."

9.     The Agreement allows the City to charge a maximum of $2.30 per 1,000 gallons of Influent Discharge (for treatment) and a maximum of $2.30 per 1,000 gallons of Effluent Discharge (for discharge from the retention ponds into the City's sewer system).

10.     For the time period from the inception of the Agreement through June of 2002, the City charged Hoopeston Foods $2.30 per 1,000 gallons of Influent Discharge and $2.30 per 1,000 gallons of Effluent Discharge.

**C)**     **The City Unilaterally Raises Discharge Price.**

11.     Starting in June of 2002 and continuing through today, the City began charging $2.58 per 1,000 gallons for Effluent Discharge, rather than the $2.30 that the City was previously charging Hoopeston Foods for Effluent Discharge (in addition to the $2.30 charged for treating the Influent Discharge). Hoopeston Foods estimates that from June 2002 through December 2004, it was overcharged by the City in an amount of approximately $45,280.09 as a result of the City unilaterally raising the Effluent

5

Discharge rate from $2.30 to $2.58 per 1,000 gallons of wastewater.

        **D)**      **The City Overcharges for Inflated Volumes of Effluent Discharge.**

      12.      From the inception of the Agreement through mid-2004, for the purposes of billing Hoopeston Foods, the City used volume readings from a single meter maintained by Hoopeston Foods at the point of Influent Discharge to determine volumes of wastewater for both the treatment and discharge costs. During the same time period the City maintained its own records of volume at the point of Effluent Discharge (as the wastewater leaves the wastewater retention ponds). Unbeknownst to Hoopeston Foods, the City's Effluent Discharge records showed that Effluent Discharge volumes were, on balance, significantly less than the Influent Discharge volumes. Apparently, because of the aeration and natural evaporation of the wastewater, the volume of Influent Discharge was being reduced in the retention ponds and the resulting volume of Effluent Discharge was, on balance, significantly less than the volume of the Influent Discharge.

      13.      Despite the significant discrepancy in Effluent versus Influent wastewater volumes, from April of 1998, when Hoopeston Foods entered the Agreement, through approximately June of 2004, when Hoopeston first learned of the discrepancy, the City concealed the discrepancy and used the higher Influent volume number as the basis for both its Influent and Effluent discharge charges to Hoopeston Foods.

      14.      Once Hoopeston Foods discovered the difference between the Influent and Effluent volumes and objected to the City, the City began using the correct Effluent Discharge volume measurements as measured by the City's own meter as the basis for discharge charges. Nevertheless, between April of 1998 and June of 2004, when the City ceased the illegal practice, Hoopeston Foods estimates that it was overcharged

approximately $311,172.29 for inflated volume of Effluent Discharge.

### E)  The City Overcharges for Influent Discharge.

15.    Starting in approximately January of 2002 the City began performing plumbing work on its retention ponds which caused Hoopeston Foods' meter for measuring Influent Discharge to over-report Influent Discharge. The City knew this fact, because in association with the plumbing work performed by the City, the City installed its own meter for the measurement of Influent Discharge which showed actual volumes significantly lower than those reported by Hoopeston Foods. Despite this knowledge, the City neither disclosed to Hoopeston Foods its plumbing work nor the fact that it had installed its own meter showing lower volumes of Influent Discharge. Accordingly, from at least January of 2002 through March of 2004, the City separately measured and maintained records of Influent Discharge which showed that the volume of Influent Discharge measured and reported by Hoopeston Foods (versus the City) was considerably more than the City's measurements and records showed.    Despite knowledge of the erroneous readings by Hoopeston Foods, the City charged Hoopeston Foods based on the erroneous, but much higher volume numbers, rather than use its own correct, albeit smaller volume numbers. Since April of 2004, after Hoopeston Foods caught the improper practice, the City has been using the lower of the two meter readings as the measurement for volume of Influent Discharge for billing purposes.  Nevertheless, between at least January of 2002 through March of 2004,  Hoopeston Foods estimates that it was overcharged by approximately $185,317.44 by the City for Influent Discharge volume.

**F)** **The City's Improper Charges for Chemicals.**

16. Sometime after entering the Agreement, the City stopped using chemicals for the treatment of Hoopeston Foods' wastewater and instead switched to aeration for treatment of Hoopeston Foods' Influent Discharge. Accordingly, at some point the City no longer had to purchase and pay for chemicals for the treatment of Hoopeston Foods wastewater. The Agreement provided that Hoopeston Foods' maximum treatment charge of $2.30 per 1000 gallons was subject to adjustment if the City's chemical costs were reduced. To date, the City has not reduced the treatment charge to reflect the fact that the City no longer incurs any chemical costs for the treatment of Hoopeston Foods wastewater. Hoopeston Foods estimates that it has been overcharged, and that the City has been unjustly enriched by approximately $756,256.20 for supposed chemical costs.

## COUNT I
## Declararatory Judgment and Specific Performance

17. Hoopeston reasserts and realleges Paragraphs 1 through 16 of this Complaint for its Paragraph 17.

18. During 1998, the City of Hoopeston, acting through its duly elected representatives, Robert Ault (Mayor) and Chalmers Flint (City Clerk) by signing the Agreement affirmatively represented to Hoopeston Foods that the City of Hoopeston desired to enter the Agreement, and that they had procured a resolution by the City Council which unanimously approved the Agreement. Accordingly, by both parties execution of the Agreement, a valid and enforceable agreement was entered on April 1, 1998.

19. Pursuant to the Agreement, the City "agreed to accept such volumes [of wastewater] *and* treat the Wastewater, all pursuant to the terms and provisions of this

8

Agreement." (See Agreement at 1 (emphasis added).)

20.     Since the commencement of the Agreement, through today, the City has accepted the discharge and treated Hoopeston Foods' wastewater as if it were operating under the terms of the Agreement. However, since the commencement of the Agreement, as detailed above, the City has overcharged Hoopeston Foods in relation to the handling of Hoopeston Foods' wastewater. When Hoopeston Foods recently discovered these overcharges, it raised its concerns to the City.

21.     In response, and despite the existence of the Agreement and the City's performance pursuant to the Agreement, the City now suggests that the Agreement, including its price limitations and term, is invalid.

22.     To the extent that the City of Hoopeston, Ault or Flint, now deny their 1998 statements, and to the extent that in fact there never was a resolution approving the Agreement, the City of Hoopeston should be equitably estopped from denying the validity of the Agreement for the following reasons:

A)      The City of Hoopeston affirmatively stated in the Agreement through its duly elected officials that the City prior to executing the Agreement had passed a unanimous resolution approving the Agreement.

B)      Despite its current claim that the Agreement was never valid, the City and Hoopeston Foods have operated as if the Agreement were controlling from 1998 through the present. During that time, no official from the City of Hoopeston ever informed Hoopeston Foods that the City's statement in the Agreement that there had been a resolution was in fact false.

C)      Hoopeston Foods has reasonably relied to its extreme detriment on

9

the existence and validity of the Agreement.

D)     To allow the City of Hoopeston to now deny the existence of the Agreement would amount to a fraud on Hoopeston Foods.

23.    There is an actual controversy between the parties with respect to the existence of and the application of the terms of the Agreement.

**WHEREFORE,** Hoopeston Foods respectfully requests that this Court enter judgment against the City on Count I of its Complaint as set forth below:

        a)      that the Agreement between the parties is valid and enforceable;

        b)      that, pursuant to the Agreement, the City can charge a maximum amount of \$2.30 per 1,000 gallons of Influent Discharge and \$2.30 per 1,000 gallons of Effluent Discharge of Hoopeston Foods' wastewater;

        c)      alternatively, in the event the City is allowed to charge an amount in excess of \$2.30 per 1,000 gallons of Effluent Discharge, that such charge can only be applied to the actual volume of Effluent Discharge;

        d)      that the Agreement is in full force and effect until 2018, as set forth within the Agreement;

        e)      interests and costs associated with these awards; and

        f)      any other relief that the Court deems appropriate.

## **COUNT II – Breach of Contract**

24.     Hoopeston reasserts and realleges Paragraphs 1 through 23 of this Complaint for its Paragraph 24.

25.     The Agreement sets forth that the costs to be charged to Hoopeston Foods for treatment of wastewater are to be based on the "actual cost" of the chemicals purchased, and are to be capped at $2.30 per 1,000 gallons.

26.     Despite this limitation, since March of 2001, the City has not purchased any chemicals to treat Hoopeston Foods' wastewater but has continued to charge Hoopeston Foods for treatment as if the City were still incurring the actual costs of the treatment chemicals.     Further, on information and belief, even prior to ceasing its purchase of treatment chemicals, the City's actual cost of those chemicals was less than the $2.30 per 1,000 gallons.

27.     Additionally, the City has breached the Agreement, and as a result unjustly received certain monies, in the following ways:

A)     Since June of 2002 the City has been improperly charging an extra $.28 per 1,000 gallons for discharge which has resulted in Hoopeston Foods being overcharged by the City in an approximate amount of $45,280 through December of 2004 and continuing;

B)     From April of 1998 through June of 2004 the City knowingly and intentionally overcharged for inflated volumes of Effluent Discharge in an approximate amount of $311,172.29.

C)     From approximately January of 2002 through approximately March of 2004, the City knowingly and intentionally charged Hoopeston Foods

11

for "ghost" volumes of Influent Discharge in an approximate amount of
$185,317.44.

**WHEREFORE,** Hoopeston Foods Inc. respectfully requests that this Court enter
judgment against the City of Hoopeston on Count II of its Complaint and restitution as
set forth below:

- a) that the City is liable to Hoopeston Foods for $311,172.29
  associated with wrongfully charging Hoopeston Foods for Effluent
  Discharge on a volume based on the higher Influent Discharge
  numbers rather than the known Effluent Discharge volume
  numbers from April 1998 through June 2004;

- b) that the City is liable to Hoopeston Foods for $756,256.20
  associated with the City's wrongfully charging it for the "actual
  costs" of chemicals which had not been purchased;

- c) that the City is liable to Hoopeston Foods for $185,317.44
  associated with charging Hoopeston Foods based on an over
  reported Influent Discharge volume known to the City from
  January 2002 through March 2004;

- d) that since June of 2002, the City has been improperly charging an
  extra $.28 per 1,000 gallons for discharge which has resulted in
  Hoopeston Foods being overcharged by the City in an approximate
  amount of $45,280.09 through December of 2004, and continuing;

- e) interest and costs associated with these awards; and

- f) any other relief that the Court deems appropriate.

12

## COUNT III -- (In the Alternative)
## Breach of Warranty of Authority Against Defendants Ault and Flint

28.  Hoopeston restates and realleges Paragraphs 1 through 27 of its Complaint for its Paragraph 28.

29.  The Agreement stated that "this Agreement is executed by the Mayor and City Clerk of the City of Hoopeston, pursuant and in accordance with the terms and provisions of a RESOLUTION unanimously passed at its meeting held on _____ . . ." The Agreement was signed by both the duly elected Mayor of Hoopeston (Robert Ault) as well as its City Clerk (Chalmers Flint) as of April 1, 1998.

30.  By executing the Agreement, Mayor Ault and City Clerk Flint represented that they had authority to sign for the City of Hoopeston pursuant to a unanimously passed resolution.

31.  To the extent that Mayor Ault's and City Clerk Flint's representations of authority were false, Ault and Flint breached a warranty of authority.

32.  Hoopeston Foods relied to their detriment on the representations of Mayor Ault and City Clerk Flint that they had authority via a City resolution to enter the Agreement.

33.  To the extent that defendants claim and prove that there in fact has never been a resolution approving the Agreement, Mayor Ault's and City Clerk's Flint's representations concerning their authority were false, made willfully and maliciously and were an abuse of the power they held as duly elected officials of the City of Hoopeston.

**WHEREFORE,** Hoopeston Foods Inc. requests Judgment against Defendants Robert Ault and Chalmers Flint as to Count III of its Complaint as follows:

a)     for all damages which Hoopeston Foods is unable to recover from the City
       of Hoopeston to the extent that the Agreement is not upheld;

b)     punitive damages in an amount to be determined at trial for the willful and
       wanton conduct described above; and

c)     for interest and the costs of this action;

d)     any other relief that this Court deems appropriate.

### COUNT IV -- (In the Alternative)
### Fraud Against All Defendants

34.     Hoopeston restates and realleges Paragraphs 1 through 27 of its Complaint
for its Paragraph 34.

35.     The Agreement stated that "this Agreement is executed by the Mayor and
City Clerk of the City of Hoopeston, pursuant and in accordance with the terms and
provisions of a RESOLUTION unanimously passed at its meeting held on
_____ . . ." The Agreement was signed by both the duly elected
Mayor of Hoopeston (Robert Ault) as well as its City Clerk (Chalmers Flint) as of April
1, 1998.

36.     To the extent a resolution was not passed approving the Agreement as
represented in the Agreement, the representation that there was a resolution was false.

37.     Mayor Ault and City Clerk Flint, acting either independently or in concert
with the City, made the written statement that there was a resolution with the intent that
Hoopeston Foods rely on the statement and with the knowledge that their statement was
false.

38.     From April of 1998 through the time Hoopeston Foods raised its concerns
regarding the overcharges, the defendants fraudulently concealed from Hoopeston Foods

their belief that the parties were supposedly operating under an invalid agreement and that the resolution they represented was unanimously passed by the City Council had never been obtained.

39.   Hoopeston Foods relied to their detriment on the representations of the defendants that a resolution had been passed and that the Agreement was valid.

40.   Hoopeston Foods also relied to its detriment on the defendants' conduct of performing under the Agreement without any expression that the Agreement was invalid.

41.   Defendants false representations concerning the resolution approving the agreement were made intentionally and maliciously.

**WHEREFORE,** Hoopeston Foods Inc. requests Judgment against Defendants as to Count IV of its Complaint as follows:

a)   for all damages which Hoopeston Foods is unable to recover from the City of Hoopeston to the extent that the Agreement is not upheld;

b)   punitive damages in an amount to be determined at trial for the willful and wanton conduct described above; and

c)   for interest and the costs of this action;

d)   any other relief that this Court deems appropriate.

#### **COUNT V (In the Alternative) –Fraudulent Concealment**

42.   Hoopeston restates and realleges Paragraphs 1 through 27 of its Complaint for its Paragraph 42.

43.   Both before and after execution of the Agreement, the City knew and understood that Hoopeston Foods believed that it would be charged based on actual wastewater volume measurements and actual costs of chemicals associated with the

15

treatment of Hoopeston Foods' wastewater.

44.    Despite knowing the terms of the Agreement, and knowing the accurate volume for both Influent and Effluent Discharge, the City consistently billed Hoopeston Foods for Effluent Discharge based upon the higher (and incorrect) Influent Discharge volume measurements as well as billed Hoopeston Foods for the costs of treatment chemicals not purchased by the City.

45.    Despite halting its purchases of chemicals for the treatment of Hoopeston Foods' wastewater, the City continued to charge Hoopeston Foods for the "actual costs" of purchased chemicals.

46.    The City knew or should have known that the figures that it was billing Hoopeston Foods for discharge and treatment of its wastewater were inaccurate, and that in fact it had (at least by March 2001), stopped purchasing chemicals for the treatment of Hoopeston Foods' wastewater. However, at no time did the City inform Hoopeston Foods of the accurate volume figures or of the fact that it stopped purchasing chemicals to treat Hoopeston Foods' wastewater.

47.    Hoopeston Foods reasonably relied upon the accuracy of the invoices from the City in conjunction with the billing associated with the City's handling of its wastewater.

**WHEREFORE,** Hoopeston Foods Inc. requests Judgment against the City as to Count V of its Complaint as follows:

a)    in the amount not less than $1,298,026.02, together with interest and the costs of this action;

b)    punitive damages in an amount to be determined at trial for the willful and

16

wanton conduct described above; and

c)      any other relief that this Court deems appropriate.

Respectfully submitted,

HOOPESTON FOODS, INC.

By:  _____
One of its attorneys

Michael Rachlis
Edwin L. Durham
RACHLIS DURHAM DUFF & ADLER
542 South Dearborn, Suite 1310
Chicago, Illinois 60605
(312) 733-3950

17

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Hoopeston Foods, Inc. | The City of Hoopeston, Robert Ault and Chalmers Flint |

| (b) County of Residence of First Listed Plaintiff Minneapolis, MN | County of Residence of First Listed Defendant Vermilion County, IL |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. **FILED** |

| (c) Attorney's (Firm Name, Address, and Telephone Number)<br>Rachlis Durham Duff & Adler, 542 S. Dearborn Street, Suite 1310, Chicago, IL 60605 | Attorneys (If Known)<br>**05-2074**<br>MAR 2 1 2005<br>JOHN M. WATERS, Clerk |
|---|---|

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff U.S. DISTRICT COURT CENTRAL DISTRICT OF ILLINOIS URBANA, IL
(For Diversity Cases Only) and One Box for Defendant)

| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question (U.S. Government Not a Party) | | | | | | PTF | DEF | | | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | | | | **PTF** | **DEF** | | |
|---|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | X 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | X 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | X 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| **CONTRACT** | **TORTS** | | **FORFEITURE/PENALTY** | **BANKRUPTCY** | **OTHER STATUTES** |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)

| X 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. 1332

Brief description of cause:
Breach of contract action for declaratory judgment and specific performance

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** 1,298,026.02 | CHECK YES only if demanded in complaint:<br>**JURY DEMAND:** X Yes ☐ No |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instructions): JUDGE | DOCKET NUMBER |
|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| March 18, 2005 | *Edwin L. Durban* |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|